# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| LEAH LEVINGER, | ) |
| Plaintiff, | ) No. 1:20-cv-07292 |
| v. | ) Judge Robert M. Dow, Jr. |
| CLAUDIA MORELL, MARIA ZAMUDIO, ALEX KEEFE, and WBEZ a.k.a. CHICAGO PUBLIC MEDIA, INC., | ) Magistrate Judge Gabriel A. Fuentes |
| Defendants. | ) |

## DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Jason M. Bradford
William L. Von Hoene
JENNER & BLOCK LLP
353 North Clark Street
Chicago, Illinois 60654
(312) 222-9350

## INTRODUCTION

WBEZ disputes many of the factual allegations in the Complaint, but for purposes of its motion to dismiss, accepts well pleaded factual allegations as true. Plaintiff Leah Levinger, a former Chicago-based housing advocate and the former Executive Director of the Chicago Housing Initiative ("CHI"), was one of the many subjects discussed in an article WBEZ published on December 11, 2019 (the "December 2019 Article"), which is attached to the Complaint as Attachment 1. (*See* Filing No. 8, at CM/ECF pp. 20-27.) The December 2019 Article reported on Ms. Levinger's testimony before a Chicago City Council committee hearing on a housing ordinance she helped craft and an ongoing Illinois Attorney General probe investigating Ms. Levinger, CHI, Alderman Byron Sigcho-Lopez, and others for their role in an effort to exchange gift cards for votes in a 2019 municipal election.[1] (*See generally id.*) The December 2019 Article specifically stated that Ms. Levinger had not been charged, that she maintained that she did nothing wrong, and that the gift cards were not given for voting for any particular candidate. (*Id.* at CM/ECF p. 22.)

Ms. Levinger purports to bring three defamation claims under Illinois law, 740 ILCS 145, pursuant to this Court's diversity jurisdiction. (*Id.* at CM/ECF p. 4-5.) Ms. Levinger does not dispute the substantial truth of the December 2019 Article. Ms. Levinger's issue appears to be that WBEZ published a news article that she did not like and that she believes hurt her reputation. Disliking the content of a news article does not give rise to a cause of action.

The Complaint against all of the defendants should be dismissed for three reasons. First, the Complaint does not identify a defamatory statement or a statement that is not substantially true

---

[1] WBEZ originally reported on the Illinois Attorney General's investigation in a February 2019 article (the "February 2019 Article").

about her in the December 2019 Article. (*See* Part I.) Second, to the extent Ms. Levinger is bringing a defamation *per se* claim, as a matter of law any potentially defamatory statement in the article can be innocently construed and is, therefore, not defamatory *per se*. (*See* Part II.a.) Third, to the extent Ms. Levinger is attempting to bring a defamation *per quod* claim, the Complaint does not allege extrinsic facts supporting a defamatory meaning to any statement or any particularized damages. (*See* Part II.b.) In addition, this Court should dismiss all claims against Ms. Zamudio because the Complaint does not allege that Ms. Zamudio wrote or published the December 2019 Article. (*See* Part III.)[2]

## FACTUAL BACKGROUND

Ms. Levinger claims that the December 2019 Article contains defamatory statements. (Filing No. 8, at CM/ECF p. 4 n. 1.) Much of the Complaint seems to focus on the reporting Ms. Zamudio performed for the earlier published February 2019 Article, which Ms. Levinger does not claim is defamatory and falls outside of the 1 year statute of limitations for defamation. (*Id.* at CM/ECF pp. 7-10.) While there are some vague allegations suggesting that Ms. Zamudio collaborated on the December 2019 Article, (*id.* at CM/ECF p. 6), the Complaint alleges that the December 2019 Article was written by Ms. Morell and edited by Mr. Keefe.[3] (*Id*.)

---

[2] Ms. Levinger also seems to bring claims on behalf of non-parties. (Filing No. 8, at CM/ECF pp. 4-5, Causes of Action 1 and 2.) She has not established standing to bring those claims. *See Kawasaki Heavy Indus., Ltd. v. Bombardier Recreational Prods., Inc.*, 660 F.3d 988, 999 (7th Cir. 2011). She also seems to be seeking a temporary restraining order requiring WBEZ to take down the December 2019 Article. (Filing No. 8, at CM/ECF p. 18.) But she has not attempted to meet any of the criteria for a temporary restraining order. *See Incredible Techs., Inc. v. Virtual Techs., Inc.*, 400 F.3d 1007, 1011 (7th Cir. 2005).
[3] While outside the allegations of the Complaint, Ms. Zamudio was not working on December 11, 2019, and did not contribute to reporting in the December 2019 Article. The last piece she authored mentioning Ms. Levinger or CHI was the February 2019 Article.

2

The December 2019 Article appeared under the headline "Housing Advocate In Vote-Buying Probe Pushes Affordable Housing Overhaul." (Filing No. 8, at CM/ECF p. 20.) The December 2019 Article covered two topics. First, Ms. Levinger's appearance at a Chicago City Council meeting to testify regarding a proposed housing ordinance she helped craft, and, second, the status of the investigation into her and her organization for vote buying. (*See, generally, id.* at pp. 20-27.) Ms. Levinger does not take issue with the reporting on the Chicago City Council meeting, other than for its appearance alongside an update on the Attorney General's investigation. The December 2019 Article makes the following specific statements concerning the investigation:

- In February 2019, WBEZ reported that the Illinois Attorney General's Office was investigating CHI and then candidate Sigcho-Lopez for vote-buying (*id.* at CM/ECF p. 22);
- The Illinois Attorney General's Office told WBEZ that the investigation was still open (*id.*);
- Ms. Levinger denied that she had done anything wrong and no one had been charged (*id.*);
- Ms. Levinger's group handed out gift cards to residents at the Barbara Jean Wright Court Apartments, a housing complex that straddles the 11th and 25th Wards (*id.*);
- Ms. Levinger acknowledged her group offered the gift cards, but says it was only a way to encourage voter turnout and no conditions were attached (*id.*);
- Ms. Levinger hadn't been contacted in months about the investigation (*id.* at CM/ECF p. 23); and
- Ms. Levinger said that staff at the Chicago Board of Election Commissioners had told the complex's tenant council that "nothing inappropriate was going on" regarding the gift cards. (*Id.*)

Ms. Levinger was also quoted making the following statements:

- "There is nothing to that allegation, it was a community trying to raise voter turnout levels in general" (*id.*);
- "The idea that a low income tenant community fighting for their survival doing a non partisan voter participation drive to empower themselves as a constituency is somehow a conflict of interest, as it relates to an affordable housing ordinance, is a ludicrous charge and completely offensive." (*Id.*)

3

Ms. Levinger does not deny the substantial truth of the December 2019 Article or deny making any of the quoted statements.[4] The only statement she specifically claims is false is that her group handed out gift cards at the Barbara Jean Wright Court Apartments. (Filing No. 8, at CM/ECF p. 7.) The remainder of Ms. Levinger's Complaint identifies facts that she believes WBEZ should have reported, (*id*. at CM/ECF pp. 8-10, 12-14), but provides no explanation for why WBEZ's exercise of editorial judgment in deciding what information to print gives rise to a cause of action for defamation under Illinois law. She also states that the December 2019 Article includes several false statements that do not actually appear anywhere in the article (*e.g.*, "Defendants published an article falsely accusing plaintiff of commission of several literal crimes as well as making accusations of a very serious nature alleging plaintiff lacked professional ethics, integrity, and professional competence," (*id.* at CM/ECF p. 3); "Defendants' allegations that plaintiff committed felony crimes of vote-buying and masterminded an extensive criminal political plot to trade votes for support for an affordable housing ordinance . . . .", (*id.* at CM/ECF p. 17)).[5] The December 2019 Article did not indicate that Ms. Levinger was convicted of, let alone accused of, any crimes. The Complaint states that the December 2019 Article implied Ms. Levinger bought the votes of various Aldermen, (Filing No. 8, at CM/ECF pp. 12, 14-15), but the Article is clear that there was an investigation into exchanging gift cards for voting in a municipal election. (*Id.* at CM/ECF p. 22.)

---

[4] Ms. Levinger seems to allege that there is confusion in the article between her, her organization, and other third parties who had a role in distributing gift cards. (Filing No. 8, at CM/ECF pp. 4-5, 7-11.) But, Ms. Levinger does not deny purchasing gift cards and working to provide them to voters, and Ms. Levinger could not truthfully make such a denial consistent with the obligations of Rule 11.

[5] Where exhibits attached to a complaint contradict the allegations of the complaint, the exhibit trumps the allegations and the plaintiff may plead herself out of court. *Thompson v. Illinois Dep't of Prof'l Regulation*, 300 F.3d 750, 754-55 (7th Cir. 2002) (citations omitted). As demonstrated below, Ms. Levinger has done that here.

Ms. Levinger's Complaint purports to bring three counts for defamation. Count I alleges that WBEZ made false statements about Ms. Levinger and CHI and that WBEZ conflated the actions of third parties with her. (Filing No. 8, at CM/ECF pp. 4, 6-7.) Count II alleges that WBEZ mischaracterized motives behind third parties' actions and that WBEZ omitted critical information about those actions from the December 2019 Article. (*Id.* at CM/ECF pp. 4-5, 7-11.) Count III alleges that WBEZ omitted details about the history of the housing ordinance for which she was an advocate in the December 19 Article.[6] (Filing No. 8, at CM/ECF p. 4-5, 11-17.)

## ARGUMENT

Ms. Levinger's Complaint is a *pro se* action. *Pro se* pleadings are held to a less stringent standard than those drafted by lawyers and must be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted). A *pro se* plaintiff, however, is not exempt from normal pleading requirements. *Randle v. Comm'r of Internal Revenue Serv.*, 1992 WL 37444, at *2 (N.D. Ill. Feb. 21, 1992). On a motion to dismiss, well-pleaded allegations are accepted as true. *Turner/Ozanne v. Hyman/Power*, 111 F.3d 1312, 1319 (7th Cir. 1997). Dismissal is proper when the Court finds the Complaint lacks "enough factual matter (taken as true)" to provide the minimum amount of notice of plaintiff's claim. *In re Ocwen Loan Serv., LLC Mortg. Serv. Lit.*, 491 F.3d 638, 648-49 (7th Cir. 2007). A complaint will be dismissed if it contains "bare legal conclusions" absent facts outlining the basis of the claims. *Perkins v. Silverstein*, 939 F.2d 463, 466-67 (7th Cir. 1991) (citations omitted).

---

[6] The complaint uses the term "false light" in several places, but does not seem to be bringing a false light claim under Illinois law. To the extent the Court construes the complaint as bringing a false light claim, WBEZ notes that the elements of false light overlap with those for defamation and would similarly fail. *Kirchner v. Greene*, 691 N.E.2d 107, 115–16 (Ill. App. Ct. 1998) (affirming dismissal of false light claim where the complaint was completely devoid of any allegation as to the falsity of any statement in the subject publication and outlining elements of cause of action).

I. **All Three Counts Should be Dismissed Because Plaintiff Has Not Identified a False Statement.**

To prevail on a claim for defamation under Illinois law, a plaintiff must show that a defendant: (1) made a false statement about the plaintiff, (2) made an unprivileged publication of that statement to a third party, and (3) that this publication caused damages. *Van Pelt v. Bona-Dent, Inc.*, 2018 WL 2238788, at *8 (N.D. Ill. May 16, 2018) (citing *Solara Tech., LLC v. Specialty Publ'g Co.*, 852 N.E.2d 825, 839 (Ill. 2006)); *see also Gerba v. Nat'l Hellenic Museum*, 2018 WL 3068409, at **4-5 (N.D. Ill. June 21, 2018) (Dow, J.) (citations omitted).

A plaintiff bears the burden of pleading falsity. *Imperial Apparel, Ltd. v. Cosmo's Designer Direct, Inc.,* 882 N.E.2d 1011, 1021 (Ill. 2008); *Kapotas v. Better Gov't Ass'n,* 30 N.E.3d 572, 587-88 (Ill. App. Ct. 2015). The test for whether a statement is true, and therefore not actionable, is "substantial truth"—absolute literal truth is not required. *Seitz- Partridge v. Loyola Univ. of Chicago,* 987 N.E.2d 34, 41 (Ill. App. Ct. 2013) (citing *Wynne v. Loyola Univ. of Chicago,* 741 N.E.2d 669, 675-76 (Ill. App. Ct. 2000)); *Gerba*, 2018 WL 3068409 at *5. Under Illinois law, a statement is substantially true if the "gist" or "sting" of the statement is true. *Moore* v. *PETA,* 932 N.E.2d 448, 457 (Ill. App. Ct. 2010) (citation omitted); *Coghlan v. Beck,* 984 N.E.2d 132, 146 (Ill. App. Ct. 2013) (citations omitted). "[A]llegedly defamatory material is not actionable even where it is not technically accurate in every detail." *Coghlan*, 984 N.E.2d at 146; *see also Maag v. Illinois Coal. for Jobs, Growth and Prosperity,* 858 N.E.2d 967, 975 (Ill. App. Ct. 2006); *Harrison v. Chicago Sun-Times, Inc.,* 793 N.E.2d 760, 766-67 (Ill. App. Ct. 2003).

In determining the gist or sting of the alleged defamation, courts look at "the highlight of the article, the pertinent angle of it, and not to items of secondary importance which are inoffensive details, immaterial to the truth of the defamatory statement." *Gist* v. *Macon Cnty. Sheriff's Dep't,* 671 N.E.2d 1154, 1157 (Ill. App. Ct. 1996) (quoting *Vachet* v. *Central Newspapers, Inc.,* 816 F.2d

6

313, 316 (7th Cir. 1987)). Thus, under Illinois law, a plaintiff must prove that the allegedly false publication made "the plaintiff *significantly worse off* than a completely or literally truthful publication would have." *Pope* v. *Chronicle Publ'g Co.*, 95 F.3d 607, 613 (7th Cir. 1996) (emphasis added) (applying Illinois law).

Courts regularly decide substantial truth on a motion to dismiss where the facts establishing truth appear on the face of the complaint or in an exhibit to the complaint. *See, e.g., Coghlan,* 984 N.E.2d at 147-48 (affirming motion to dismiss on substantial truth); *Moore,* 932 N.E.2d at 457 (same); *Maag,* 858 N.E.2d at 975 (same). A Court can resolve substantial truth where "no reasonable jury could find that substantial truth had not been established." *Moore,* 932 N.E.2d at 457; *Gerba*, 2018 WL 3068409 at *5; *Harrison,* 793 N.E.2d at 766-67.

Count I of Ms. Levinger's Complaint is the only count that identifies a specific statement Ms. Levinger claims is false. Ms. Levinger alleges that she and CHI did not distribute gift cards specifically at the Barbara Jean Wright Courts. (Filing No. 8, at CM/ECF p. 7.) Ms. Levinger's claim appears to be either that she or her group provided or offered gift cards at other locations, or that unnamed third parties actually provided the gift cards while she and CHI provided "technical and organizing assistance" for the effort. (*Id.* at CM/ECF p. 9.) The gist of the December 2019 Article remains the same—Ms. Levinger was part of an effort to provide gift cards in a campaign to encourage voter turnout. Ms. Levinger is not "substantially worse off than" if WBEZ had reported that Ms. Levinger distributed gift cards at other locations or provided technical and organizing assistance for the effort rather than handing out gift cards herself. *See Pope,* 95 F.3d at 613. Accordingly, Ms. Levinger has not pleaded falsity under Illinois law.

In Count II, Ms. Levinger complains of omissions from the December 2019 Article and that WBEZ failed to investigate things that Ms. Levinger believes WBEZ should have investigated.

7

Specifically, Ms. Levinger complains that Ms. Zamudio's investigation into the issues affecting the Barbara Jean Wright Court residents and what she learned from interviews of those residents related to the distribution of gift cards were recklessly and maliciously withheld from publication. Ms. Levinger fails to identify any false statement made in the December 2019 Article, nor does she contend that the omissions she identifies make any part of the article false.

Similarly, in Count III, Ms. Levinger complains that Defendants "adduced a motive for the purported felonious vote-buying scheme," alleging that Defendants concluded the motive was "ostensibly to get an affordable housing Ordinance introduced to the Chicago City Council." (Filing No. 8, at CM/ECF pp. 11-12.). The December 2019 Article contains no statements about Ms. Levinger's motive, or the motive behind the alleged vote-buying scheme that was the subject of the Illinois Attorney General's investigation. Ms. Levinger fails to identify any statement that is purportedly false that would support Counts II or III. Accordingly, the Complaint should be dismissed.

Ms. Levinger's failure to identify a single false statement attributable to WBEZ defeats Counts II and III of the Complaint. This failure is highlighted in Count II by Ms. Levinger's own admissions to offering gift cards to encourage voter turnout, (*id.* at CM/ECF p. 22), and Ms. Levinger's failure to deny that she offered gift cards or that there was an ongoing investigation into her and CHI's actions. (*See generally, id.* at CM/ECF pp. 1-18 ); *see also Gerba*, 2018 WL 3068409 at \*\*5-6 (dismissing a complaint where plaintiff failed to allege that an objectionable part of defendant's statement was, in fact, false.)

Because Ms. Levinger has not identified a false statement or a statement that is not substantially true, the Complaint should be dismissed.

8

**II. Ms. Levinger's Claims Should be Dismissed Because She Fails to Identify a Statement That Is Defamatory *Per Se* And Because She Has Failed to Allege A Defamatory Statement Or Any Particularized Damages in Support of a Defamation *Per Quod* Claim.**

Illinois recognizes two categories of defamatory statements: statements that are *per se* defamatory and statements that are *per quod* defamatory. Ms. Levinger appears to be asserting a defamation *per se* claim. (Filing No. 8, at CM/ECF pp. 5-6.) It is not entirely clear whether she is also asserting a defamation *per quod* claim. The primary distinction between *per se* and *per quod* claims is that *per se* claims cover certain types of statements where harm is obvious on its face. Specifically, statements (1) imputing that a person has committed a crime; (2) imputing that a person is infected with a loathsome communicable disease; (3) imputing that a person cannot perform or lacks integrity in performing employment duties; (4) imputing that a person lacks ability or otherwise prejudices him in his profession; and (5) imputing that a person has engaged in adultery or fornication are defamatory *per se*. *Antonacci v. Seyfarth Shaw, LLP*, 39 N.E.3d 225, 234-35 (Ill. App. Ct. 2015) (citations omitted).

Where a statement is not defamatory *per se*, a plaintiff may still pursue a *per quod* claim if she pleads extrinsic facts showing the defamatory nature of the language. *Mittelman v. Witous*, 552 N.E.2d 973, 979 (Ill. 1989) (abrogated on other grounds by *Kuwik v. Starmark Star Mktg. & Admin., Inc.*, 619 N.E.2d 129, 135 (Ill. 1989)); *Anderson v. Vanden Dorpel*, 667 N.E.2d 1296, 1303-04 (Ill. 1996). To succeed on a defamation *per quod* claim, a plaintiff must allege, with particularity, the harm resulting from the defendant's statements. *Barry Harlem Corp. v. Kraff,* 652 N.E.2d 1077, 1082-83 (Ill. App. Ct. 1995). A plaintiff's allegations must make clear how a defendant's alleged defamatory statements harmed plaintiff; general allegations such as damages to one's reputation or health, economic loss, and emotional distress are insufficient to plead a *per quod* claim. *Richard v. Watkins*, 2019 WL 6487379, at *4 (N.D. Ill. Dec. 3, 2019) (Lefkow, J.)

(citing *Becker v. Zellner*, 684 N.E.2d 1378, 1387 (Ill. App. Ct. 2006)); *see also Doctor's Data, Inc. v. Barrett*, 2011 WL 5903508, at \*\*9-10 (N.D. Ill. Nov. 20, 2011) (Chang, J.) (dismissing *per quod* claim where plaintiff alleged that defendant's statements harmed business but did not allege that it lost customers and where plaintiff did not allege that harm to its reputation translated into damages); *Downers Grove Volkswagen, Inc. v. Wigglesworth, Inc.*, 546 N.E.2d 33, 38 (Ill. App. Ct. 1989) (damage allegation too general where plaintiff alleged defendant's statements harmed business, but it did not allege loss of customers).

This Court should dismiss the Complaint because it fails to identify a statement that is defamatory *per se*. To the extent Ms. Levinger is asserting a defamation *per quod* claim, she has not identified a defamatory statement or any particularized harm resulting from the statement.

    **a. Ms. Levinger Cannot Sustain a Defamation Per *Se* Claim Because She has Not Identified a Sufficiently Objectionable Statement Or a Statement That Cannot be Innocently Construed.**

Ms. Levinger offers a broad assertion that the December 2019 Article amounts to defamation *per se* because, she says, it falsely charged her with the "commission of a crime, alleged that [she] lacked integrity to perform her job duties, and imputed to [her] a want of ability and ethical care in her profession." (Filing No. 8, at CM/ECF p. 5.) But Ms. Levinger makes these assertions out of context and she fails to identify any specific statements she alleges are defamatory *per se*. *Morris v. Household Mortg. Servs., Inc.*, 350 F. Supp. 2d 786, 788-89 (N.D. Ill. 2004) (Shadur, J.) (dismissing counts in part because Plaintiff's failed to "*specifically* identify the words said to be defamatory and hence actionable.") (emphasis in the original).

Even if Ms. Levinger had identified a statement made by Defendants that falls into a *per se* category, it would not be actionable if, after considering the context surrounding the statements, it could reasonably be innocently interpreted. *Tuite v. Corbitt,* 866 N.E.2d 114, 121 (Ill. 2006);

10

*Chapski v. Copley Press,* 442 N.E.2d 195, 199 (Ill. 1982). Under the innocent construction rule, courts consider the full context of the allegedly defamatory statements in determining their meaning. *Mittelman, 5*52 N.E.2d at 979. If a statement is capable *of any* reasonable interpretation that is *not* defamatory *per se,* the rule requires the court to adopt the innocent interpretation and deem the statement to be nonactionable*,* even if the statement is also susceptible to a *per se* construction. There is "no balancing of reasonable constructions." *Antonacci,* 39 N.E.3d at 235. Whether a statement is susceptible to an innocent construction is a question of law for this Court. *Chapski,* 442 N.E.2d at 199; *Kapotas,* 30 N.E.3d at 591-92 (citations omitted).

In *Black v. Wrigley*, for example, Judge Kennelly found that a defendant's allegedly false statement that she had been appointed to investigate the plaintiff for financial misconduct was nonactionable as defamation *per se* because the statement was "insufficiently specific in that it does not include a contention that [plaintiff] committed a crime at all (as opposed to being under investigation) or what specific crime [defendant alleged plaintiff had] committed." 2017 WL 8186996, at *10 (N.D. Ill. Dec. 8, 2017). Like the plaintiff in *Black*, 2017 WL 8186996 at *10, Ms. Levinger fails to identify how the *true* statement that Ms. Levinger was under investigation (which she does not deny) imputed the commission of a crime, particularly when the December 2019 Article specifically noted that no one had been charged with a crime. (Filing No. 8, at CM/ECF p. 22.) Moreover, the December 2019 Article did not state that the investigation was criminal; it could have been a civil. Additionally, the December 2019 Article made clear that, although Ms. Levinger was the subject of an ongoing investigation, she was performing her job duties by fighting for low income households and testifying to the Chicago City Council in support of a housing bill. Accordingly, Ms. Levinger has not stated a defamation *per se* claim.

11

### b. Ms. Levinger Cannot Sustain a Defamation Per *Quod* Claim Because No Defamatory Statement Has Been Identified and There is No Allegation of Any Particularized Harm.

To the extent that Ms. Levinger's also asserts *per quod* claims, they should also be dismissed because no defamatory statement is identified, but also because a *per quod* claim requires the plaintiff to plead extrinsic facts showing the defamatory nature of the language. *Anderson*, 667 N.E.2d at 1303-04. This includes pleading special damages resulting from a defendant's conduct. *Barry Harlem,* 652 N.E.2d at 1082. A plaintiff bears the burden of pleading facts sufficiently establishing a causal link between the alleged defamatory statements and the damages she seeks. *See Chang Hyun Moon v. Kang Jun Liu*, 44 N.E.3d 1134, 1140-41 (Ill. App. Ct. 2015) (dismissing allegations of special damages for lack of facts to support necessary causal inference). The Complaint does not satisfy these requirements.

First, the Complaint fails to allege any facts connecting the harm she alleges to a defamatory statement. Ms. Levinger speaks throughout the Complaint of harm to her reputation, including that WBEZ's "story ended [her] employment with [CHI]" and "ended [her] 15-year career in Chicago as a community organizer and highly respected affordable housing policy expert," (Filing No. 8, at CM/ECF p. 17), but she does not connect that "harm" to any false statement or statement that is not substantially true. "Where the extrinsic facts are insufficient to reasonably support the defamatory meaning plaintiff urges, dismissal of the complaint is in order." *Taradash v. Adelet/Scott-Fetzer Co.,* 628 N.E.2d 884, 887-88 (Ill. App. Ct. 1993); *see also Anderson*, 667 N.E.2d at 1303 (dismissing *per quod* claim where plaintiff pleaded no extrinsic facts showing the comment at issue was interpreted as being defamatory). Ms. Levinger has failed to plead extrinsic facts showing that any statement in the December 2019 Article harmed her (as

opposed to, for example, the truthful fact that there was an investigation causing her any such harm). This alone warrants dismissal of the Complaint.

Second, Ms. Levinger fails to allege how the December 2019 Article caused the $225,000 in damages she seeks to recover (plus an additional $100,000 in punitive damages) and the "end[] [of her] employment with [CHI]" and her career as a "community organizer and highly respected affordable housing policy expert." (Filing No. 8, at CM/ECF p. 17.) General allegations such as damages to one's reputation or health, economic loss, and emotional distress are insufficient to plead a *per quod* claim. *Richard*, 2019 WL 6487379 at *4 (dismissing *per quod* claim where plaintiff failed to plead facts establishing how alleged statements harmed plaintiff's reputation); *Doctor's Data*, 2011 WL 590358 at *10 (dismissal where plaintiff failed to plead specific harm to business and how reputational harm translated into monetary damages); *Downers Grove Volkswagen*, 546 N.E.2d at 38 (general allegation that statement harmed business without alleging actual loss of customers was insufficient). Simply alleging that she is entitled to monetary damages without expressing *how* Defendants' statements caused those damages is insufficient to support a defamation *per quod* claim. Accordingly, Ms. Levinger cannot sustain a defamation per *quod* claim and the Complaint should be dismissed.

### III. Defendant Maria Zamudio Should Be Dismissed Because Ms. Levinger Has Not Alleged That She Made Any False Statement In the December 2019 Article.

Ms. Zamudio respectfully requests that this Court dismiss the claims against her because the Complaint does not specifically allege that she published or wrote the December 2019 Article.

Ms. Levinger does not allege that any statements in the December 2019 Article are attributable to Ms. Zamudio. Ms. Levinger asserts that Ms. Zamudio conducted multiple investigations that either informed or were omitted from the December 2019 Article, but she does not identify any allegedly defamatory statement *actually made by* Ms. Zamudio. She

13

acknowledges that the December 2019 Article was published by Ms. Morell and Mr. Keefe. (Filing No. 8, at CM/ECF p. 6.) A defamation claim can only be asserted against a person or entity who published a false or defamatory statement. *See Wesbrook v. Ulrich*, 90 F. Supp. 3d 803, 807-08 (W.D. Wis. 2015) (granting motion to dismiss under similar Wisconsin law in favor of defendant where plaintiff alleged that defendant "assisted in the preparation of a false letter," but did not identify what false statements defendant made). Ms. Levinger has failed to identify any false statement published by Ms. Zamudio.

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that this Court dismiss the Complaint with prejudice.

February 1, 2021

Respectfully submitted,

CLAUDIA MORELL, MARIA ZAMUDIO, ALEX KEEFE, and WBEZ, a.k.a. CHICAGO PUBLIC MEDIA, INC.

By: /s Jason M. Bradford
One of Their Attorneys

Jason M. Bradford
William L. Von Hoene
JENNER & BLOCK LLP
353 North Clark Street
Chicago, Illinois 60654
(312) 222-9350

14