**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

|  |  |
|---|---|
|  | Case No.   <u>1:20-cv-07292</u> |
|  | ) |
|  | ) |
| LEAH LEVINGER, | )   Judge Robert M. Dow, Jr. |
|           Plaintiff | )   Magistrate Judge Gabriel A. Fuentes |
|  | ) |
|  | ) |
| v. | ) |
|  | ) |
| CLAUDIA MORELL, MARIA ZAMUDIO, | ) |
| ALEX KEEFE, and WBEZ, a.k.a. CHICAGO | ) |
| PUBLIC MEDIA, INC., | ) |
|           Defendants. | ) |
|  | ) |

**PLAINTIFF'S SUPPLEMENTAL PLEADING PURSUANT TO F.R.C.P. 15(a)(2)**

Leah Levinger
Pro Se Plaintiff
95 Fountain Street, #3154
New Haven, Connecticut 06515



FILED
9/20/2021    AK
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

0

## INTRODUCTION

Plaintiff herein files a supplemental pleading under F.R.C.P. 15(a)(2) to clarify ambiguities the Court has identified within Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss ("Response"), which the Court has indicated require further elaboration before the Court can make a ruling regarding Defendant's Motion to Dismiss under F.R.C.P. 12(b)(6). Procedurally, the content of Plaintiff's Complaint and Response are not intended to be supplanted by this supplementary filing, only augmented by it. Plaintiff therefore requests that the Court and Defendant accept this filing as a supplementary (rather than substitute) pleading.

## I. PLAINTIFF WAS NOT THE TARGET OF AN ATTORNEY GENERAL INVESTIGATION

### *Statements 1, 5, 7, 8, and 9*

Plaintiff was not the target of an attorney general investigation. Publications by Defendant framing her as the target of an attorney general investigation constitute false statements.

The Court has characterized these Statements 1, 5, and 7-9 (as identified by Plaintiff in her Response brief and as restated on Page 5 of the Court's Memorandum Opinion filed on August 23, 2021, "Court's Memorandum") as "Statements Regarding Attorney General Probe". Plaintiff disputes that any of these five "Statements Regarding Attorney General Probe" are either literally *or* substantially true. Plaintiff apologizes if the wording in her Response was not sufficiently clear.

**Statement 1**: The title of the article itself: "Housing Advocate in Vote-Buying Probe Pushes Affordable Housing Overhaul."

**Statement 5**: "…Levinger told WBEZ she hadn't been contacted in months about the investigation."

**Statement 7**: The internet caption for the article: "Illinois' attorney general probed vote-buying allegations involving the advocate and an alderman. ***Now they're working together at City Hall***." (emphasis added)

**Statement 8**: In February, WBEZ reported that the Illinois Attorney General's Office was investigating allegations of vote-buying involving to Levinger's group…"

**Statement 9**: Both Levinger and the alderman say they've done nothing wrong, and no one has been charged."

Levinger continues to dispute the truth of each of these five statements, and contends that Statements 1, 7, 8, and 9 are libelous *per se*, while Statement 5 is libelous *per quod*.

**A. Falsity**

These five statements are false in two distinct ways. First, no vote-buying allegations were ever made against Levinger or Levinger's organization. Indeed, it would not even be physically or materially plausible for any such allegations to have been made about or against Levinger, who was neither present at the development on Election Day, nor who conducted outreach to residents at the development, at any point, regarding the Tenant Council's Election Day organizing initiative or its attendant gift-card promotion. Despite the implausibility of Defendant's claims in this regard, following Defendant's 12/11/19 publication, Plaintiff nonetheless made considerable inquiry among those personally present at Barbara Jean Wright Courts on Election Day to try to understand what had occurred and to understand if Defendant's representations had any basis to them, that any allegation of wrong-doing had been made by any party against her or her organization. Despite considerable investigation, Plaintiff has no awareness that she was ever named or otherwise identified in any allegation of vote-buying made by any party. Plaintiff similarly does not comprehend how any such

2

allegations could conceivably have been made about her. While Plaintiff does not believe that Defendant has ever interviewed a single source who made any such allegation, nor that Defendant has even heard second-hand of any source making any such allegation, if Defendant should somehow produce such an individual, Plaintiff greatly looks forward to cross-examining them at trial. Plaintiff similarly has no awareness that her organization was ever named or otherwise identified in any allegation of vote-buying made by any party who Defendant contends may have made allegations about "vote-buying".

As a related matter, Plaintiff believes it may be helpful to state for the record at this juncture that she has no personal awareness of any allegations verbalized by any party other than statements made by political candidate Alex Acevedo. Regarding Acevedo, Plaintiff has seen video, captured by members of the Barbara Jean Wright Courts tenant council, of the press conferences Acevedo held at Barbara Jean Wright Courts during the run-off period, in which Acevedo made statements alleging misconduct by competing *political candidate* Byron Sigcho-Lopez's electoral operation. Plaintiff is aware that towards the end of particularizing claims against Sigcho-Lopez, Acevedo also alleged contributory misconduct on the part of the Barbara Jean Wright Courts Tenant Council. Plaintiff has no personal awareness of any statements alleging any Election Day misconduct that were made by any *resident* (or any voter) at Barbara Jean Wright Courts, nor of any resident (or any voter) of the larger neighborhood. As a result, absent any information Defendant may provide in the future indicating that any *resident or voter* at Barbara Jean Wright Courts ever made any statement alleging wrong-doing against *any party*, Plaintiff is not even in a position to concede that *residents or voters* at the development made allegations of any form of impropriety against the BJWC Tenant Council. With the evidence Plaintiff is aware of, collected after considerable investigation on her own part, Plaintiff can only agree that one political candidate (Alex Acevedo) made allegations against his

competitor for office (Byron Sigcho-Lopez). Plaintiff agrees that in the course of making those

allegations, that political candidate (Acevedo) also identified the Barbara Jean Wright Courts Tenant

Council as a party to the misconduct Acevedo alleged, although the grandmas and grandpas running

the Tenant Council--- who Plaintiff understands to have generally bought food with their gift cards,

because otherwise they might not have had it--- were undoubtedly merely the tragic pawns in his

design.

Secondly, the five statements above are false because Plaintiff was not the target of any Illinois

Attorney General probe into the matter. Contrary to Defendant's mis-construal of Plaintiff's

arguments (Defendant's Reply Memorandum, p. 8), Plaintiff is not contesting the *existence* of an

Attorney General investigation into allegations of vote-buying in the 25th ward. Plaintiff is merely

stating that she was not the target of any such investigation. Whatever allegations there may have

been, they were not about Plaintiff, nor Plaintiff's organization, and neither was the investigation.

## B. Cause of Action

The gist of Defendant's article is well-summarized by the salacious title they chose (Statement 1) and

the internet caption they extracted (Statement 7). The gist of their article--- its version of "substantial

truth," was that Levinger was the target of a vote-buying probe because Levinger had gone around

the 25th ward on Election Day handing out gift cards to people who voted for Candidate Byron

Sigcho-Lopez for Alderman. The implication of their article was that Levinger's work to reform City

affordable housing policy --- e.g. *the actual event of December 11, 2019* (an eight-hour City Council

Hearing on the Development for All Ordinance, a hearing which itself was the culmination of five

years of work) --- was somehow suspect, somehow a "conflict of interest" (???) emerging as the

outgrowth of alleged election day malfeasance Defendant attributed to Levinger. This was the gist of

4

Defendant's article. This is how the article was understood by dozens of reasonable readers in Levinger's long-cultivated professional community who contacted her to share their understanding, express their alarm, and in many cases, immediately cease working with her and her organization based upon the "gist" of Defendant's claims. Levinger's life's work was mutated into a mere expedient news hook upon which to pin salacious clickbait, and the "sting" of it stung, deeply.

**Statements 1, 7, 8, and 9 are libelous *per se*, while Statement 5 is libelous *per quod*.**

- Statement 9 imputes to Plaintiff the commission of a crime: "Both Levinger and the alderman say they've done nothing wrong, and no one has been charged." As stated in Plaintiff's Response (p. 2 ), this statement implies baselessly that if *anyone* were to be charged as a result of an investigation, then *Levinger* would be someone who *would be charged*. This imputes to Levinger the commission of a crime. Statement 9 is thus libelous *per se*. "Any written or printed statement that falsely charges another person with the commission of a crime is libelous per se." *Levitt v. S.C. Food Service*, Inc. 820 F. Supp. 366 (N.D. Ill. 1993)(applying IL law); *Troman v. Wood*, 62 Ill. 2d 184, 340 N.E. 2d 292 (1975); *Sivulvich v. Howard Publications, Inc*. 126 Ill. App. 3d 129, 81 Ill. Dec. 416, 466 N.E. 2d 1218 (1st Dist. 1984). Thus this statement, falsely imputing to Levinger commission of a crime regarding which she Defendant stated she could face criminal indictment is libelous *per se.*

- Statements 1, 7, and 8--- taken in the context of the whole article--- impute that Levinger is not fit to perform her job, suffers from want of integrity in the discharge of her duties of employment, and engaged in wrong-doing in the course of carrying out her job duties. Statements 1, 7, and 8 are also thus libelous *per se* because they fall under the category of "imputations tending to injure in profession, trade, or business." *Cody v. Harris*, 409 F.3d 853, 67 Fed. R. Evid. Serv. 418 (7th Cir. 2005) (applying Illinois law), *Powers v. Delnor*

5

*Hosp.*, 148 Ill. App. 3d 844, 102 Ill. Dec. 109, 499 N.E.2d 666 (2d Dist. 1986); *Maimon v. Sisters of Third Order of St. Francis*, 142 Ill. App. 3d 306, 96 Ill. Dec. 500, 491 N.E.2d 779 (3d Dist. 1986); *Kolegas v. Heftel Broadcasting Corp.*, 154 Ill. 2d 1, 180 Ill. Dec. 307, 607 N.E.2d 201 (1992); *Girsberger v. Kresz*, 261 Ill. App. 3d 398, 198 Ill. Dec. 940, 633 N.E.2d 781 (1st Dist. 1993).

- Statement 5 is libelous *per quod*.  Deployed as it was in Defendant's Article, Statement 5 was used as putative "evidence" that Levinger was the target of an Attorney General investigation.


**C. Harm**

As statements that (a) impute to Plaintiff commission of a crime and/or (b) impute to Plaintiff an unfitness to perform her job and want of integrity in the discharge of her professional duties, Defendants' statements 1, 7, 8, and 9 are considered defamatory *per se*.  (b): *Cooper v. Rockford Newspapers, Inc.*, 50 Ill. App. 3d 247, 8 Ill. Dec. 506, 365 N.E.2d 744 (2d Dist. 1977);  *Piacenti v. Williams Press*, 347 Ill. App. 440, 107 N.E.2d 45 (1st Dist. 1952).  Thus, such statements imputing want of integrity *Goldberg v. Brooks*, 409 Ill. App. 3d 106, 350 Ill. Dec. 601, 948 N.E.2d 1108, 268 Ed. Law Rep. 507 (1st Dist. 2011); *Anderson v. Beach*, 386 Ill. App. 3d 246, 325 Ill. Dec. 113, 897 N.E.2d 361 (1st Dist. 2008), and/or an unfitness for duty regarding an employee in carrying out their duties are actionable *per se Crinkley v. Dow Jones & Co., Inc.*, 119 Ill. App. 3d 147, 74 Ill. Dec. 636, 456 N.E.2d 138 (1st Dist. 1983); *Colson v. Stieg*, 86 Ill. App. 993, 42 Ill. Dec. 53, 408 N.E.2d 431 (2d Dist. 1980), judgment aff'd and remanded, 89 Ill. 2d 205, 60 Ill. Dec. 449, 433 N.E.2d 246 (1982).  Indeed, such causes of action as in (b) are actionable without pleading special damages, on the ground that the person is automatically exposed to the hazard of losing her office or employment in consequence of the defamatory words *Flannery v. Allyn*, 47 Ill. App. 2d 308, 198 N.E.2d 563 (1st Dist. 1964); *Cavanagh v. Elliott*, 270 Ill. App. 21, 1933 WL 2497 (3d Dist. 1933).

That notwithstanding, Plaintiff has nonetheless plead special damages (Complaint p. 16-17, Response p.15-18), including loss of employment, loss of employment and professional opportunities and loss of income, as well as general damages, including harm to reputation, loss of social and professional network, shame, other forms pain and suffering, and substantial reputational, operational, and functional damage to the organization she spent a decade of her life building from scratch, which Plaintiff argues is also a meaningful source of personal suffering, when one sees an organization one personally built over considerable effort and at great personal cost over a decade of one's prime of life damaged and weakened in its capacity because of Defendant's libelous publications.

## D.  Request

Plaintiff requests that the Court might consider this supplemental pleading when considering how to treat statements 1, 5, 7, 8 and 9 in response to Defendant's 12(b)(6) motion.  Plaintiff hopes this supplemental pleading clarifies the arguments Plaintiff was making in her Complaint and Response, and that in due consideration of this supplemental pleading, the Court finds Plaintiff has exceeded the threshold inquiry required by *Twombly and Iqbal* and rules that these five statements can remain in the case as actively disputed defamatory statements contributing to Plaintiff's overall cause of action for defamation and false light.

## II.  NO VOTER AT THE COMPLEX SAID THEY WERE PROMISED A GIFT CARD FROM LEVINGER'S GROUP

### *Statement 3*

## A.  Falsity

Plaintiff seeks the Court's leave under F.R.C.P. 15(a)(2) to reiterate, and perhaps clarify, the claim in her Complaint (p.10) and Response (p. 5-6, 13) that no voter, and in fact, no resident, at the Barbara Jean Wright Courts Complex ever claimed they were promised a gift card from Levinger or

Levinger's group.  Defendant's publication that "Some voters at the complex said they were
promised $20 gift cards from Levinger's group" is false.  No voter or resident at Barbara Jean Wright
Courts ever made any such allegation regarding promises from Levinger or Levinger's group.  This
again is an area where Defendant recklessly, invalidly, and sloppily conflates statements that may
well have been made about the Barbara Jean Wright Courts Tenant Council's initiatives or activities,
as if the statements instead were made about Levinger or Levinger's organization.  Had Defendant
published a statement to the effect of "*Residents* of Barbara Jean Wright Courts in the 25th and 11th
ward stated they were promised a $20 gift card by *the Barbara Jean Wright Courts Tenant Council*,"
Plaintiff would have no dispute about the accuracy of Defendant's representations:  The Barbara Jean
Wright Courts Tenant Council did indeed promise a gift card for any *resident* of the development
who shared their contact information with the tenant council, and took a flyer regarding upcoming
tenant council meetings and the tenant council's on-going and intensifying work to improve
dangerous conditions and safeguard the community against what the tenant council reasonably feared
was imminent displacement.  The Tenant Council also asked any *resident* who came to the Council's
office who requested a gift card if they would agree to receive information and calls from the tenant
council, if they would be willing to come to a tenant council meeting, and if they would be willing to
volunteer for the tenant council.  Residents requesting gift cards were not asked by the tenant council
if they had voted or even if they were registered to vote.  They absolutely were never asked to vote
for any particular candidate.  The Tenant Council imposed no obligation regarding *political*
participation on individuals in order to receive a gift card at all--- They asked for only *community*
participation in self-defense and participation in a community organizing drive at a time when this
community was at the edge of a precipice (sale, potential market-conversion) and out of a sense of
collective desperation shortly after an apartment electrical fire had placed the lives of six children in
the community at risk and HUD still would not meet or even inspect their development.  The Tenant

8

Council simply verified residency in the development, and tried to share information about efforts to save the community from the many physical, financial, and dramatic rent increase hazards it faced. However, Defendant did not allege that *residents* were promised gift cards *by their own tenant council* once they proved residency and took a flyer from the tenant council. If Defendant had stated that residents were promised gift cards *by their own tenant council*, that would be true. Defendant instead alleged that *voters* were promised gift cards by *Levinger* or *Levinger's organization*. These are materially different statements, and the statement Defendant published is materially false. Levinger did not promise any resident or voter a gift card, and neither did Levinger's organization. Furthermore, Plaintiff maintains that she finds it highly implausible that any resident or voter ever *alleged* they were promised a gift card by either Levinger or Levinger's organization.

In her Complaint (p. 5,6, 8, 10-11) and Response (p. 5-6), Plaintiff was (obviously unsuccessfully) trying to explain that distinction when she discussed how pervasively Defendant conflated the actions of the Barbara Jean Wright Courts Tenant Council with the actions of Levinger or Levinger's organization, as well as how pervasively Defendant conflated accusations that may possibly have been made against the Barbara Jean Wright Courts Tenant Council[1], as if any such accusations had been made against Plaintiff or Plaintiff's organization, which they were not. Plaintiff begs forgiveness if her treatment of this problem in prior pleadings was inadequate or confusing and thanks the Court and Defendant for enduring the complexity of reducing to paper a complex situation involving dozens of different and discrete individuals, organizations, political operations, and interests all interacting at the scene of BJW Courts in 2019. Plaintiff hopes the Court will consider

---

[1] For the record, again, Plaintiff is only personally aware of accusations regarding "vote-buying" that were made by one political candidate (Acevedo) against the competing political candidate (Sigcho-Lopez), in which Acevedo smeared the Tenant Council's activities as some kind of tragic pawn in the service of his attack against a competing political candidate during a run-off election. Plaintiff is not personally aware of any accusations made by residents or voters at the development.

this supplementary information to clarify her dispute as to the factual inaccuracy of "Statement 3" in Plaintiff's Response (p.3, 5-6) (which the Court has also taken to characterizing as "Statement 3" (Memorandum Opinion and Order, p. 5).

**B. Request**

Plaintiff asks the Court to consider whether, in light of this supplementary information shedding additional light on her Complaint and Response, Statement 3 did appropriately "state a claim" cognizable under legal elements and ought not be subject to dismissal under 12(b)(6). Plaintiff asks the Court to allow Statement 3 to remain in the case as an actively contested statement that Plaintiff continues to claim was both false and defamatory.

### III. Clarifying Plaintiff's Involvement in the Barbara Jean Wright Courts Tenant Council's Gift-Card Give-Away

*Statements 2 and 4*

The Court has not dismissed Statement 2 or 4, but Plaintiff here writes to respond to the Court's request for additional information regarding Plaintiff's involvement in the Barbara Jean Wright Courts Tenant Council's gift-card program in connection with Statements 2 and 4 in the article. For recap:

**Statement 2:** "Levinger's group handed out gift cards to residents at the Barbara Jean Wright Court Apartments…"

**Statement 4:** ""Levinger acknowledged her group offered the gift cards…"

**A. Clarification**

Plaintiff maintains that both of these statements are substantially false, but wants to provide additional information to inform the Court's ruling because the Court has indicated (on p. 10) that its

ruling may be based on a working-interpretation of the Pleadings that Plaintiff provided no form of support to the BJWC Tenant Council's gift card effort. If the Court holds that understanding, Plaintiff writes to correct that misimpression. The Barbara Jean Wright Courts community was in a scary situation, Plaintiff felt she was failing as a community organizer to help them change the situation they were facing which was only growing more dire and higher stakes, and Plaintiff donated the gift cards, using her personal funds to try to help them in their organizing effort. Plaintiff placed very clear stipulations on that donation, in a written donation agreement with the Tenant Council, that the Tenant Council would use the resource to support community engagement and contact-collection efforts only, and would not place any condition on residents to either vote or register to vote in order to receive a gift card, based on information received from the Board of Elections about how the tenant council should stay within the bounds of the law while running its initiative. Plaintiff played no role in the distribution of the gift cards, but donated significantly to the Tenant Council's initiative. She placed express conditions on the use of that donation to stay within ethical bounds and legal bounds, and ensure the effort would be non-partisan and also non-political, but beyond ensuring the Council understood those legal and ethical boundaries, the Council's initiative remained its own.

Plaintiff maintains that there is a substantial difference between the action she took ----- donating the gift cards to the Tenant Council for it to use in *its* activities and distribute as and when *it* saw fit within expressly non-partisan and non-political bounds set by Plaintiff as Donor, and the action imputed to her by Defendants, who characterized Plaintiff as "*handing* out" gift cards to residents at the development. In the English language, to "*hand out*" has a very *physical* connotation: It would reasonably imply that Plaintiff played a role in the physical distribution of gift cards at the development. It would imply that Plaintiff played an implementation role in the Tenant Council's activities with the give-away. The statement would be understood by a reasonable reader to evoke

11

those physical images (e.g., "the church *handed out* food to homeless people on Michigan Avenue"; "The teacher *handed out* the worksheets to the students"; The health center is *handing out* clean syringes in West Garfield Park"; "The supermarket *handed out* leaflets about its sales and promotions"; The little girl skipped through the party *handing out* candy to her friends.") But a donor donating a resource to a community organization, and that organization handing out that resource to its community members are two very discrete actions. One would never say that a Donor who donates food to the Church, which Church later distributes the food to homeless people, *handed out* the food. Similarly, one would never say that Donors who gave money or resources to the hospital's Needle Exchange Harm Reduction Program *handed out* clean syringes to drug users in West Garfield Park. To use words in such ways would conflate very distinct roles, responsibilities, and powers and would produce materially false understandings. To name this distinction is thus not to engage in semantics or wordplay: The roles of donor-to-program versus implementer-of-program carry very different practical powers, and thus are assigned different legal and ethical responsibilities. For example, if an employee running a hospital's clean-needle exchange started instead stabbing people with the needles in obvious violation of everything they he communicated to the hospital or its donors he would do, the employee would be both morally and legally liable for that, not the donor, who never intended to support such violent activities in the world, and in fact had every reasonable belief to the contrary, that they were supporting a wholly different set of activities in the world.

To a slightly less dramatic degree, the same conflation of roles, responsibilities, and powers between a donor and someone who then makes available to end-users what has been donated infects the word "offer" in Statement 4: "Levinger acknowledged her group *offered* the gift cards…" which again implies an active involvement in the distribution of the gift cards to residents at the development. If instead the Defendant had written, "Levinger acknowledged she personally donated gift cards to the

12

Barbara Jean Wright Courts Tenant Council on the express agreement that the Tenant Council would use them for non-partisan, non-political ends to support its community organizing efforts and try to get more people aware of, and involved in, the tenant council's work to save the development", then that statement would be entirely true about Levinger's role. If instead the Defendant had written, "Levinger acknowledged she personally donated the gift cards to the Barbara Jean Wright Courts Tenant Council, who then distributed them to residents at the development in ways that became the subject of allegations of vote-buying by ___?___(unknown, mystery-accuser)" that might not be Levinger's *preferred* story about how it all ended up with her donation and the work of her donee, but it would certainly be a defensible statement and one that would obviously not give rise to a cause of action under law.

**B. Standard regarding "Substantial Truth"**

At common law, the defamatory nature of a statement depended on an objective test based on the ordinary meaning the statement would carry to an average reader who is making a reasonable interpretation of the publication: "The meaning of a communication is that which the recipient correctly or mistakenly *but reasonably* understands that it was intended to express." *Restatement (First) of Torts, §563*. Most courts continue to ask the Jury to employ a "reasonable person" standard in the determination of whether a publication is either true or "substantially true", commonly finding that a plaintiff has a defamation claim if "a reasonable juror could conclude that the alleged libel was more damaging in the mind of the average reader…than would have been a precisely truthful report." *Ramada Inns, Inc. v. Dow Jones & Co*, 543 A2d 313, at 321.

The question of whether a publication constitutes "substantial truth" thus asks the jury to put themselves in the shoes of WBEZ's average (reasonable) reader and inquire whether the reasonable

13

reader would experience Defendant's story the same way and have the same impression of Levinger if Defendant had (a) represented Levinger as taking the action she actually *did* take--- using her personal funds and donating gift cards to the Tenant Council for their use in expressly non-partisan and non-political activities--- instead of representing Levinger as taking an action she had no part in of (b) *handing out* gift cards to residents at the development.

**C.  Request:**  Plaintiff asks that the Court continue to retain Statements 2 and 4 in the case as actively contested statements. Plaintiff contends that both statements are neither technically true nor substantially true.  Given the fact-heavy determinations involved of whether Defendant's Statements 2 and 4 were either "substantially true" or "substantially deviated from the truth," it seems unlikely that the dispute regarding Statement 2 or 4 can be ascertained as a matter of law.  These are thus rightly questions that belong to the purview of the jury to assess as one of its many fact-finding matters, using the "reasonable reader" standard to assess if the alleged libel was more damaging in the minds of an average reader than a technically or precisely true characterization would have been.

## IV.  CONCLUSION

In view of the foregoing, it is respectfully submitted that the Court may find that Plaintiff has provided sufficient details to state a cause of action passing the threshold inquiry under *Twombly* and *Iqbal* to retain Statements 1, 5, 7, 8, and 9 ("Statements Regarding Attorney General Probe"), as well as to reinstate Statement 3, based on supplementary pleadings provided here.

Plaintiff thanks the Court for ruling that the Parties can begin developing a Discovery Plan and Schedule regarding this litigation.  Plaintiff asks that the Court might require Defendant to file an Answer to Plaintiff's Complaint and Response under F.R.C.P. 12, adding any supplemental responses Defendant's may have in Answer to Plaintiff's Amended Complaint under F.R.C.P. 15.  Plaintiff

14

requests this such that Plaintiff can be put on notice regarding any affirmative defenses Defendant

intends to claim, and any relevant legal standards Defendant believes to be the appropriate legal

standards for adjudicating this case.

Plaintiff appreciates the Court's and Defendants' patience with her as she continues to learn the

procedural and substantive aspects of the law relevant to adjudicating and resolving this dispute.

Plaintiff also, more generally, appreciates the American legal system for allowing her access to this

forum as a pro se plaintiff.

Date of signing:  September 20, 2021

Signature of Plaintiff:  _____

Printed name of Plaintiff        Leah Levinger

## CERTIFICATE OF SERVICE

I, Leah Levinger, a pro se plaintiff, hereby certify that on September 20, 2021, I caused copies of the
attached Plaintiff's Supplementary Pleading to be served via email and first class mail on:

Jason M. Bradford

William L. Von Hoene

JENNER & BLOCK LLP

353 North Clark Street

Chicago, Illinois 60654

312-222-9350