IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LEAH LEVINGER, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 20-cv-07292 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| CLAUDIA MORELL, MARIA ZAMUDIO, ALEX KEEFE, and WBEZ, *also known as*, CHICAGO PUBLIC MEDIA, INC., | ) ) ) ) ) | |
| | ) | |
| Defendant. | | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendants Claudia Morell, Maria Zamudio, Alex Keefe, and WBEZ's ("Defendants") motion for sanctions [34]. For the reasons set forth below, Defendants' motion [34] is granted and Plaintiff Leah Levinger's ("Plaintiff" or "Levinger") claims are dismissed with prejudice. Because this order resolves all the claims in the case, a final judgment will be entered under Federal Rule of Civil Procedure 58 in favor of Defendants and against Plaintiff. Civil case terminated.

**I.      Background**

Because the Court discussed the facts of this case in its order denying Defendants' motion to dismiss [21], the Court only briefly restates them here. In December of 2019, Defendants published an article entitled, "Housing Advocate In Vote-Buying Probe Pushes Affordable Housing Overhaul" ("December 2019 article").[1] See Claudia Morell, *Housing Advocate In Vote-*

---

[1] The Court may take judicial notice of the existence of this article and others cited by the parties because their existence is "(1) not subject to reasonable dispute and (2) either generally known within the territorial jurisdiction or capable of accurate and ready determination through sources whose accuracy cannot be questioned." *Ennenga v. Starns*, 677 F.3d 766, 773–74 (7th Cir. 2012).

*Buying Probe Pushes Affordable Housing Overhaul*, WBEZ CHICAGO (December 19, 2019), https://www.wbez.org/stories/housing-advocate-in-vote-buyingprobe-pushes-affordable-housing-overhaul/5ad06b61-89a2-4ed1-8ad7-fa6cffd9f958. In the article, WBEZ reporter Claudia Morell ("Morell"), with contributions from another WBEZ reporter, María Ines Zamudio ("Zamudio"), reported on a proposed local housing ordinance. *Id.* The article stated that the Illinois Attorney General was investigating vote-buying allegations in the 25th Ward stemming from a gift card initiative run at the Barbara Jean Wright Court Apartments ("BJWC Apartments"). *Id.* The article further noted that (1) a local housing rights advocate, Plaintiff, (2) her organization, Chicago Housing Initiative ("CHI"), and (3) a local alderman's campaign were "involve[ed]" in the investigation. *Id.*

On December 9, 2020, Plaintiff filed a complaint in this Court, alleging that Defendants defamed her by publishing certain statements in the December 2019 article. [1.] Specifically, Plaintiff alleged that the following six statements were false:

1. "Housing Advocate in Vote-Buying Probe Pushes Affordable Housing Overhaul."
2. "Levinger's group handed out gift cards to residents at the Barbara Jean Wright Court Apartments…"
3. "Some voters at the complex said they were promised $20 gift cards from Levinger's group…"
4. "Levinger acknowledged her group offered the gift cards…"
5. "…Levinger told WBEZ she hadn't been contacted in months about the investigation."
6. "…Levinger fielded most of the questions Aldermen had on the proposal."

[21, at 1; 27, at 5.] Plaintiff additionally identified the following three statements as "misrepresentations which substantially mislead the reader":

7. "Illinois' attorney general probed vote-buying allegations involving the advocate and an alderman."
8. "In February, WBEZ reported that the Illinois Attorney General's Office was investigating allegations of vote-buying involving to Levinger's group…"
9. "Both Levinger and the alderman say they've done nothing wrong, and no one has been charged."

[21, at 1–2; 27, at 5.] On February 1, 2021, Defendants moved to dismiss the complaint. [16.]

On August 23, 2021, the Court granted in part and denied in part Defendants' motion to dismiss. [27.] The Court granted the Defendants' motion to dismiss statements 3 and 6 and Plaintiff's claims regarding the December 2019 article's lack of context. [*Id.*, at 14.] The Court denied the Defendants' motion as to statements regarding the Illinois Attorney General's investigation (statements 1, 5, and 7–9) and statements regarding gift card distribution (statements 2 and 4). [*Id.*] Regarding the statements regarding the Illinois Attorney General probe, the Court denied Defendants' motion, noting that Plaintiff generally denied being "'in' a vote buying probe," which was sufficient at the pleading stage to uphold Plaintiff's complaint. [*Id.*, at 8.] However, the Court acknowledged that Plaintiff might be confusing a grand jury investigation into vote-buying, as stated in the complaint, with an Illinois Attorney General probe, as reported in the December 2019 article. [*Id.*, at 9.] As such, the Court "encourage[d] Plaintiff to consider whether her allegation that she was never the subject of *any* Attorney General probe is accurate and, if it is not, to submit an amended complaint if she thinks she can still state a defamation claim." [*Id.*] On September 20, 2021, Plaintiff filed a supplemental pleading to clarify her complaint's allegations in response to the Court's request. [28–29.]

On September 24, 2021, Defendants moved for Rule 11 sanctions against Plaintiff, requesting that the Court dismiss Plaintiff's claims with prejudice. [34.] Plaintiff filed her response to Defendants' motion on October 29, 2021. [47.] Defendants filed their reply on November 19, 2021. [49.]

### III. Legal Standard

Rule 11 requires that when an attorney or pro se litigant files a pleading, she "certifies that to the best of [her] knowledge, information, and belief, formed after an inquiry reasonable under

the circumstances" that (1) "it is not being presented for an improper purpose," (2) "the claims * * * are warranted by existing law," and (3) "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b); *Wright v. Tackett*, 39 F.3d 155, 158 (7th Cir. 1994) (holding that Rule 11 applies to both attorneys and pro se litigants). A court may impose sanctions "on a party for making arguments or filing claims that are frivolous, legally unreasonable, without factual foundation, or asserted for an improper purpose," including "a frivolous argument or claim is one that is 'baseless and made without a reasonable and competent inquiry.'" *Fries v. Helsper*, 146 F.3d 452, 458 (7th Cir. 1998) (citation omitted). In determining whether to impose sanctions, the Court must undertake an objective inquiry into "whether the party * * * should have known that [her] position is groundless." *Cuna Mut. Ins. Soc. v. Office & Prof'l Employees Int'l Union, Local 39*, 443 F.3d 556, 560 (7th Cir. 2006) (citation and internal quotation marks omitted). An attorney or pro se litigant "cannot avoid sanctions by claiming subjective good faith if a reasonable inquiry into the facts and law would have revealed the frivolity of the position." *McGreal v. Vill. of Orland Park*, 928 F.3d 556, 560 (7th Cir. 2019).

**III.  Analysis**

Much like the earlier motion to dismiss, the proper disposition of the instant motion turns on whether Plaintiff's claims are substantially true. Substantial truth is an affirmative defense to defamation, *Lemons v. Chron. Pub. Co.*, 625 N.E.2d 789, 791 (Ill. App. Ct. 1993), and substantially true statements are not actionable under Illinois law, *Seitz-Partridge v. Loyola Univ. of Chicago*, 987 N.E.2d 34, 41 (Ill. App. Ct. 2013). "While determining 'substantial truth' is normally a question for the jury, the question is one of law where no reasonable jury could find that substantial truth had not been established." *Moore v. People for the Ethical Treatment of*

4

*Animals, Inc.*, 932 N.E.2d 448, 457 (Ill. App. Ct. 2010) (citation omitted). Substantial truth is established when the defendant demonstrates "the truth of the 'gist' or 'sting' of the defamatory material." *Lemons*, 625 N.E.2d at 791. "Where the plaintiff's own characterization is not substantially different from the allegedly defamatory language, such language may be deemed substantially true." *Harrison v. Chi. Sun-Times, Inc.*, 793 N.E.2d 760, 766 (Ill. App. Ct. 2003) (citation omitted).

Much like in the Court's prior order [27], the Court will address the allegedly defamatory statements in groupings according to their subject matter.

### 1. Statements Regarding the Illinois Attorney General Probe

In relation to the statements regarding the Illinois Attorney General probe (statements 1, 5, and 7–9), the Court concludes that statements 1 and 7–9 are substantially true. Those statements are as follows:

1. "Housing Advocate in Vote-Buying Probe Pushes Affordable Housing Overhaul."
7. "Illinois' attorney general probed vote-buying allegations involving the advocate and an alderman."
8. "In February, WBEZ reported that the Illinois Attorney General's Office was investigating allegations of vote-buying involving to Levinger's group…"
9. "Both Levinger and the alderman say they've done nothing wrong, and no one has been charged."

[21, at 1–2; 27, at 5.]

In contrast to her initial pleading [21, at 8], Plaintiff now acknowledges that she was aware that the Illinois Attorney General was investigating alleged vote-buying in the 25th Ward and that the investigation encompassed the gift card initiative in which she and her organization were involved [29, at 1–4; 47, at 2–5]. Plaintiff still maintains that statements 1 and 7–9 are defamatory because they state that she was the target of such an investigation. [*Id.*] But along with shifting her argument from her prior denial of any awareness of any Illinois Attorney General investigation

[21, at 8], Plaintiff fails to rebut Defendants' well-supported contention that statements 1 and 7–9 are substantially true. The "gist" of statements 1 and 7–9 is that the Illinois Attorney General investigated an alleged vote-buying scheme related to a gift card initiative involving Plaintiff or CHI. *Lemons*, 625 N.E.2d at 791. Plaintiff seemingly accepts each component of this statement. Plaintiff concedes that she personally donated to the gift card initiative and documents submitted by Defendants demonstrate that CHI helped run the event. [29, at 7–11; 34, at Ex. C; 47, at 5–6.] Plaintiff acknowledges that she was aware that the Illinois Attorney General was conducting such an investigation. [29, at 4; 34, at Ex. D; 47, at 3–4.] Plaintiff does not contest that the Attorney General investigated the gift card initiative due to allegations of vote buying. [34, at Ex. D; 47, at 6.] All together, these concessions comprise the "gist" of Defendants' statements. *Lemons*, 625 N.E.2d at 791.

Plaintiff's disagreement regarding the veracity of statements 1 and 7–9 boils down to her argument that the December 2019 article painted her as a "target" of the Illinois Attorney General probe. But the article does not bear out Plaintiff's interpretation. It does not state that Plaintiff was "targeted" or "sought out" by the Illinois Attorney General. *Supra* Morell, *Housing Advocate In Vote-Buying Probe Pushes Affordable Housing Overhaul*, WBEZ CHICAGO (December 19, 2019). As Defendants correctly note [49, at 7], Defendants reported that the Illinois Attorney General investigated a gift card initiative that involved Plaintiff or CHI and nothing in the article states that Plaintiff or CHI were targeted [29, at 4; 34, at Ex. D; 47, at 3–4.] At bottom, Plaintiff truly objects to what readers might assume about her and CHI when they read an article stating that there were allegations of vote-buying. Risks such as misperception, leaping to unsupported conclusions, and taking matters out of context abound, even for private citizens when they become "community organizers," as Plaintiff describes herself [see 47, at 11]. The First Amendment

accords the media wide latitude in reporting on matters of public concern, such as those raised in the article in question. See *Snyder v. Phelps*, 562 U.S. 443, 451–53 (2011) (citations omitted and cleaned up) (noting that "speech on matters of public concern," including when it "is a subject of legitimate news interest," is "at the heart of the First Amendment's protection"). While the Court is sympathetic to Plaintiff's desire to use this litigation to obtain an "honest accounting" of the dispute over the article [see 47, at 2], because the challenged statements are substantially true, they cannot support a viable defamation claim.

The Court further concludes that statement 5 is substantially true. Statement 5 reads: "Levinger told WBEZ she hadn't been contacted in months about the investigation." [21, at 1; 27, at 5.] As Defendants point out [49, at 7], in response to a question from Morell, Plaintiff stated that the investigation into "vote buying allegations in the 25th Ward with [Plaintiff] and [Alderman] Byron [Sigcho-Lopez]" was "not still going on." [34, at Ex. D; 47, at 3–4.] Plaintiff later emailed Morell and stated that "[w]ithin three months of [the article], the investigation [Morell] reference[d] was formally closed with no findings." [34, at Ex. D.] This evidence shows that the "gist" of statement 5 is substantially true and therefore not defamatory. *Lemons*, 625 N.E.2d at 791.

Because no reasonable jury could disagree with the proposition that statements 1, 5, and 7–9 are substantially true, Plaintiff lacks a viable claim for defamation. See *Moore*, 932 N.E.2d at 457. The Court thus grants Defendants' motion for sanctions as to statements 1, 5, and 7–9 and dismisses Plaintiff's claims as to these statements with prejudice.

### 2. Statements Regarding Distribution of Gifts Cards

Turning to the statements regarding the distribution of gift cards (statements 2 and 4), the Court concludes that they are also substantially true. Statements 2 and 4 read:

    2. "Levinger's group handed out gift cards to residents at the Barbara Jean Wright Court Apartments…"
    4. "Levinger acknowledged her group offered the gift cards…"

[21, at 1; 27, at 5.] In this Court's order denying Defendants' motion to dismiss, the Court observed that Plaintiff's complaint did not indicate that "she or CHI were involved in the gift card program," only that Plaintiff "supported the BJWC's Tenant Council" by "providing technical, organizing, media, and financial support." [27, at 10.] As a result, the Court then concluded that Defendants could not demonstrate that their statements were substantially true. [*Id.*] However, the Court further noted that "if Plaintiff or her organization supported BJWC's Tenant Council's distribution of the gift cards, then statements 2 and 4 are substantially true." [*Id.*]

    In Plaintiff's supplemental pleading and her response to the instant motion, Plaintiff concedes that while she "played no role in the distribution of the gift cards," she "donated the gift cards, using her personal funds" to do so. [29, at 11; 47, at 5–6.] Further, as Defendants note [49, at 5], Plaintiff has admitted involvement in the gift card initiative, most importantly in a press release announcing that the gift card event was "run by * * * tenants [sic] rights organization, Chicago Housing Initiative" [34, at Ex. C].

    Considering these clarifications, it is now readily apparent that statements 2 and 4 are substantially true. The "gist" of the December 2019 article was that Plaintiff or CHI were involved in the gift card initiative, which handed out gift cards to residents at the BJWC Apartments. *Lemons*, 625 N.E.2d at 791. Based on Plaintiff's representations that she donated the gift cards and her organization helped to run the event, Defendants' statements that "Levinger's group handed out gift cards to residents at the Barbara Jean Wright Court Apartments" and "Levinger acknowledged her group offered the gift cards" are substantially true. [27, at 5.]

    Given that no reasonable jury could dispute that statements 2 and 4 are substantially true,

the Court also grants Defendants' motion for sanctions as to statements 2 and 4 and dismisses Plaintiff's claims as to these statements with prejudice. See *Moore*, 932 N.E.2d at 457.

### IV. Conclusion

Before concluding, the Court notes that this case demonstrates the competing needs for robust reporting on the one hand and legal protection against defamatory statements on the other. See, *e.g.*, *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964) (considering a defamation claim against a newspaper "against the background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open"); *Curtis Publ'g Co. v. Butts*, 388 U.S. 130, 147–48 (1967) (citations and quotations omitted) (noting the "competing considerations" of the "guarantees for speech and press" and "the interests of personal reputation and press responsibility"); *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 340 (1974) (observing that "[a]lthough the erroneous statement of fact is not worthy of constitutional protection, it is nevertheless inevitable in free debate"). Through this litigation, Plaintiff has sought an opportunity to better understand the motivations behind Defendants' reporting and to tell her side of the story. [21, at 4; 47, at 1–2.] The Court believes that Plaintiff has now been afforded that opportunity. While the Court does not dispute that Plaintiff brought her claims in "subjective good faith," "a reasonable inquiry into the facts" has now shown that her position is legally "groundless," justifying sanctions in the form of dismissal of the claims. *McGreal*, 928 F.3d at 560; *Cuna*, 443 F.3d at 560. Defendants have not requested stronger sanctions, nor would any be appropriate here beyond bringing this litigation to a close.

\* \* \*

For the reasons stated above, Defendants' motion for sanctions [34] is granted and Plaintiff's claims are dismissed with prejudice. Because this order resolves all the claims in the

case, a final judgment will be entered under Federal Rule of Civil Procedure 58 in favor of Defendants and against Plaintiff. Civil case terminated.

Dated: September 29, 2022

Robert M. Dow, Jr.
United States District Judge